IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:17-cv-628

Pedro Rodriguez Martinez, Mateo )
Hernandez Lopez and Elmer Menjivar )
Argeta, on behalf of themselves and )
all others similarly situated, )
                             )
       Plaintiffs, )
                             )
      vs. )      CLASS AND COLLECTIVE ACTION
                             )             COMPLAINT
Alpha Technologies Services, Inc., )
East Carolina Commercial Services, LLC, )
Solar Guys, Inc., César Mendoza, and )
Jorge Ramos, )
                             )
      Defendants. )
                             )
_____ )

## PRELIMINARY STATEMENT

1. This is an action brought on behalf of Pedro Rodriguez Martinez, Mateo Hernandez Lopez and Elmer Menjivar Argeta (collectively the "Named Plaintiffs") on behalf of themselves and all other similarly situated employees against their former employers. The Named Plaintiffs and their coworkers were employed in the building of a solar farm in Hope Mills, North Carolina, described as the largest solar farm east of the Rockies. The Named Plaintiffs allege that they and their colleagues suffered several wage and hour violations as a result of Defendants' practices of misclassifying them as independent contractors, not paying the proper overtime rate, making unlawful wage deductions, requiring employees to purchase their own personal protective equipment and failing to pay all wages owed and

1

due. Defendants are the general contractor and subcontractors responsible for construction of the solar farm.

2. The Named Plaintiffs seek to represent several classes of workers pursuant to the class action procedure in Rule 23 of the Federal Rules of Civil Procedure and the statutory collective action procedure in 29 U.S.C. § 216(b) who suffered violations of federal and state wage and hour laws, as defined in ¶¶ 90, 92, 94 and 104.

3. This action is based on Defendants' violations in 2015 and 2016 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*.

4. Based on Plaintiffs' claims under the FLSA and the NCWHA, they seek payment of back wages and an equal amount of liquidated damages, and attorneys' fees and costs under 29 U.S.C. § 216(b) and N.C.G.S. §§ 95-22(a), (a1) and (d).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337 (interstate commerce), 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA), and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S. C. §§ 2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff Pedro Rodriguez Martinez (hereinafter "Rodriguez Martinez") worked for Defendants from January to May 2016 performing labor at the solar farm in Hope Mills, Cumberland County, North Carolina.

9. Plaintiff Mateo Hernandez Lopez (hereinafter "Hernandez Lopez") worked for Defendants from February to May 2016 performing labor at the solar farm being constructed by Defendants in Hope Mills, Cumberland County, North Carolina.

10. Plaintiff Elmer Menjivar Argeta (hereinafter "Menjivar Argeta") worked for Defendants from December 2015 to March 2016 performing manual labor at the solar farm in Hope Mills, Cumberland County, North Carolina.

11. By acting as the named Plaintiffs in this action, each Plaintiff hereby affirms his consent to participate as a Plaintiff in this FLSA action.

12. At all times relevant to this action, Plaintiffs and members of the classes they seek to represent pursuant to Rule 23, Fed. R. Civ. P. and 29 U.S.C. § 216(b) were jointly employed by Defendants within the meaning of the FLSA and NCWHA during each workweek in which they performed work for Defendants.

13. At all times relevant to this action, Plaintiffs and the members of the classes they seek to represent were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

14. Defendant Alpha Technologies Services, Inc. (hereinafter "ATS") is a Nevada corporation whose business consists of providing construction and installation services. Its registered agent is CSC Services of Nevada, Inc., 2215-B Renaissance Drive, Las Vegas, Nevada. Its director is Frederick Kaiser and its President is Andrew Zogby.

3

15. Although Defendant ATS is incorporated in Nevada and its registered agent is in Nevada, it also uses 3767 Alpha Way, Bellingham, Washington as its business address.

16. Defendant ATS is a member of the Alpha Group, which is, according to Alpha Group's website, "a global collective of companies that are dedicated to creating world-class powering solutions for communication, commercial, industrial and renewable energy markets." Frederick Kaiser is the chairman of the Alpha Group.

17. Alpha Technologies Incorporated, another member of the Alpha Group whose business, according to its website, "consists of providing powering solutions to the broadband and renewable energy industries," performs its construction and installation services through Defendant ATS. Alpha Technologies, Inc.'s principal place of business is 3767 Alpha Way, Bellingham, Washington.

18. Defendant East Carolina Commercial Services, LLC (hereinafter "ECCS"), is a North Carolina limited liability company. Its principal office is located at 9615 Sage Meadows Road, Bailey, North Carolina. Its registered agent is Defendant César Mendoza.

19. According to Defendant ECCS's website, the company is located in Wilson, North Carolina and provides "large scale commercial solar installation services throughout North Carolina and the United States," including module and racking installation.

20. Defendant César Mendoza (hereinafter "Mendoza") is a natural person who resides in Bailey, Nash County, North Carolina. Defendant Mendoza is the Chief Executive Officer and Managing Member of Defendant East Carolina Commercial Services.

21. Defendant Mendoza incorporated East Carolina Commercial Services in July 2015.

22. Defendant Solar Guys, Inc., (hereinafter "SG") is a Virginia corporation with its principal place of business located at 11879 Falling Creek Drive, Manassas, Henrico County, Virginia. Its registered agent is National Registered Agents, Inc.

23. Defendant SG describes itself as "a global provider of clean, renewable energy solutions." "SG Inc. specializes in EPC [engineering, procurement and construction] and O&M [operations and maintenance] of utility-scale and commercial solar systems."

24. Defendant Jorge Ramos (hereinafter "Ramos") is the president and director of Defendant SG.

25. At all times relevant to this action, Defendants had the authority to direct, control, and/or supervise the work of Plaintiffs and were employers or joint employers of Plaintiffs within the meaning of 29 U.S.C. §§ 203(d) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (5).

26. At all times relevant to this action, Plaintiffs and their similarly situated co-workers were jointly employed by Defendants within the meaning of 29 U.S.C. §§ 203(e)(1) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (4).

27. At all times relevant to this action, Defendant ATS was an enterprise engaged in commerce or the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) of the FLSA, in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of more than $500,000.

28. At all times relevant to this action, Defendant SG, Inc., was an enterprise engaged in commerce or the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) of the FLSA, in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of more than $500,000.

29. At all times relevant to this action, Defendant ECCS was an enterprise engaged in commerce or the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) of the FLSA, in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of more than $500,000.

## FACTUAL ALLEGATIONS

*Contracting and Subcontracting Relationship between Defendants*

30. In April of 2015 Defendant ATS entered into an Engineering, Procurement and Construction Agreement with Principal Solar, Inc., to build the solar farm in Hope Mills, Cumberland County, North Carolina located off of Roslin Farm Road, known as Innovative Solar 46, IS46 and Principal Sunrise IV (hereinafter "IS46" or "the solar farm").

31. Upon information and belief, Defendant ATS was the general contractor for IS46, responsible for obtaining the necessary permits and overseeing all aspects of the construction of IS46.

6

32. During the time period relevant to this complaint, Defendant ATS held a General Contractor's license from the state of North Carolina, and none of the other Defendants had General Contractor's licenses.

33. Around May 2015, Defendant ATS applied to the Cumberland County Planning and Inspections Department for approval of the site plan for the solar farm, listing Alpha Technologies as the project's "owner/developer."

34. On September 25, 2015, Defendant ATS applied to Cumberland County for necessary building permits for the construction of the solar farm, identifying the contractor for the project as Alpha Technologies.

35. Upon information and belief, as general contractor, Defendant ATS was also responsible for hiring and managing all subcontractors needed for the IS46 project and ensuring that the staffing needs were met in order to complete the project on a timely basis.

36. Upon information and belief, Defendant ATS contracted with Defendant Ramos and his company, Defendant SG, to provide most of the labor needed to construct IS46.

37. Defendants Ramos and SG subcontracted with Defendant Mendoza and his company, Defendant ECCS, to provide additional workers to perform manual labor at the solar farm.

38. Defendants Mendoza and ECCS submitted weekly invoices to Defendants Ramos and SG showing the total hours worked that week by them and their crew members.

39. Defendants Ramos and SG then paid Defendants Mendoza and ECCS an hourly rate for each hour or part of an hour of work performed by the members of the crews supervised by and/or on the payroll of Defendants Mendoza and ECCS. The hourly rate paid by Defendants Ramos and SG did not include a premium for overtime hours.

7

40. Upon information and belief, at all times relevant to this complaint, Defendants Mendoza and ECCS did not have sufficient monetary resources on deposit in any financial institution to pay the wages owed for any one workweek's wages that were payable to the Plaintiffs and their similarly situated co-workers until such time as Defendants ATS and/or SG had paid them for that workweek's work.

41. Upon information and belief, Defendants Ramos and SG were paid by Defendant ATS and, in turn, used that money to pay Defendants Mendoza and ECCS and any other subcontractors with similar arrangements.

42. Upon information and belief, at all times relevant to this complaint, Defendants Ramos and SG did not have sufficient monetary resources on deposit in any financial institution to pay the wages owed for any one workweek's wages that were payable to the Plaintiffs and their similarly situated co-workers until such time as Defendant ATS had paid them for that workweek's work.

43. Upon information and belief, at all times relevant to this complaint, Defendants ATS, SG and ECCS had a close working relationship and were not completely disassociated with respect to the employment of Plaintiffs and their similarly situated co-workers. All the Defendants exercised significant control over the day to day operations of the solar farm and over how Plaintiffs and their similarly situated co-workers performed their work.

*Plaintiffs' Work at IS46*

44. Construction began on IS46 the week of August 17, 2015 and was completed in December 2016.

8

45. Throughout the construction phase, there was a fence around the construction site with a locked gate and security personnel. Upon information and belief, Defendant ATS had the fence built and hired, or authorized someone to hire on its behalf, the security personnel.

46. There was at least one trailer at the solar farm construction site that was used as the office. Upon information and belief, Defendant ATS was responsible for having the office constructed and/or delivered to the solar farm.

47. Defendants Mendoza and ECCS first started working at IS46 in November 2015.

48. In November 2015, Defendant Mendoza advertised on Facebook several times that East Carolina Commercial Services was hiring people to work installing solar panels, that the pay would be $10 per hour, that no experience was necessary and that the workers were needed as soon as the following day.

49. On or around November 25, 2017, Plaintiff Menjivar Argeta responded via Facebook to an advertisement posted by Defendant Mendoza, which contained the terms described above. He received a response via Facebook which instructed him to come to the solar farm on a specific day to apply in person, provided directions to the solar farm and told him that he needed to bring his own boots, hard hat, vest, safety glasses and gloves with him.

50. On or around December 3, 2015 Plaintiff Menjivar Argeta reported to the solar farm as instructed through the Facebook message. When he arrived, Plaintiff Menjivar Argeta was instructed to add his name to a list of workers in a notebook maintained by the office staff and then he was hired by Defendant Mendoza. Plaintiff Menjivar Argeta filled out additional paperwork in the office the following day, but was not required to fill out a job application.

51. Plaintiff Menjivar Argeta's work at the solar farm was building solar panels. He worked with a crew of approximately 50 other workers.

52. Plaintiff Menjivar Argeta and his coworkers received instructions on a daily basis from their supervisors, Julio and his sons, Leo and Julio. Defendant Mendoza gave instructions to Julio and his sons. Sometimes Defendant Mendoza would also supervise Plaintiff Menjivar Argeta and his coworkers.

53. Plaintiff Menjivar Argeta and his coworkers used nail guns to make the solar panels. The nail guns were provided by Defendant Mendoza. The nail guns were stored at the jobsite overnight in a storage facility controlled by Defendant Mendoza.

54. Upon information and belief, the materials necessary to construct the solar panels were purchased and provided by Defendant ATS.

55. Plaintiff Rodriguez Martinez learned about the available jobs at the solar farm through friends. He went to the solar farm and was instructed to report to the office in order to apply. The office was in a trailer on the property and there were approximately five people working in the office at the time. He filled out an application in Spanish and started working that same day, which was on or around January 25, 2017.

56. On the first day of work, a supervisor explained to Plaintiff Rodriguez Martinez and the other new workers that they would be working with the machinery and showed them what they would be doing. Plaintiff Rodriguez Martinez was not told when he was hired or at any time after that day who he was working for.

57. Plaintiff Rodriguez Martinez's job was to drive around the construction site collecting trash and drop off the trash in a designated area. He drove a dump truck, fork lift and another

type of vehicle that lifted trash cans. Upon information and belief, the vehicles he drove were rented and/or controlled by Defendant ATS.

58. Plaintiff Hernandez Lopez also learned about the job opportunities at IS46 through a friend. He went to the solar farm to apply for a job and was directed to the office by a security guard.  Inside the trailer there was a sign about hiring workers and the staff were giving out job applications and helping job applicants fill them out.  A Spanish speaking woman instructed him to fill out an application, told him that the job would pay $10 per hour, and told him they would call him. About 3 or 4 days later, a woman called him from the solar farm to tell him he was hired and to report to work the following Monday, February 1, 2017 at 7 a.m.

59. Plaintiff Hernandez Lopez was not told when he was hired or at any time after that day who he was working for. He worked in a crew of about 20 people and usually had a supervisor named Mauricio.

60. Plaintiff Hernandez Lopez primarily worked cleaning machinery at the solar farm. His final week working at the solar farm he worked operating machinery used for picking up trash. Upon information and belief, the machinery was rented by Defendant ATS.

61. Plaintiffs Rodriguez Martinez and Hernandez Lopez were provided with shovels at the worksite.  The shovels were kept inside a storage container which was owned or controlled by Defendants Mendoza and ECCS.  Plaintiffs Rodriguez Martinez and Hernandez Lopez had to sign the shovels out each morning and back in at the end of the day. Upon information and belief, the shovels were owned by one of the other Defendants.

11

62. The Plaintiffs and their coworkers had to attend a job-site safety meeting each morning at 7:30 a.m. The meeting was conducted by a man named Hector who, upon information and belief, worked for Defendant ATS.

63. Upon information and belief, Hector was the Project Manager for the solar farm, overseeing the construction plans, compliance with applicable safety regulations, and the overall staffing of the project.

64. The Plaintiffs performed work that was integral to the solar farm's construction and was thus integral to Defendant ATS's operation. Building and installing solar panels and maintaining the machinery necessary for the building and installation of the solar panels is an integral part of Defendant ATS's business of building solar projects.

65. Upon information and belief, all of the work of the Plaintiffs and their similarly situated co-workers was performed on worksites controlled by Defendants ATS.

66. On or around March 11, 2016 Plaintiff Menjivar Argeta was terminated along with about 20 other workers. They were each given a letter from Defendant Mendoza by one of the women who checked workers in and out of the job site. The group that was terminated that day had all been working for Defendant Mendoza building solar panels and were told that they were no longer needed. Plaintiff Menjivar Argeta did not return to work after that day.

67. Around May 20, 2016 Plaintiff Rodriguez Martinez was given a letter by one of the women who worked in the office, signed by Defendant Mendoza, informing him that he was being terminated because he was no longer needed. Plaintiff Rodriguez Marntinez asked the Project Manager, Hector, about the letter and Hector told him that he could ignore the letter because Defendant Mendoza did not have authority to fire him. Regardless, Plaintiff Rodriguez Martinez did not return to work after that day.

68. On or around May 20, 2016 Plaintiff Hernandez Lopez and about 20 other workers were told by one of the men in charge of the machinery that there was no more work for them for a little while and that he would call them when it was time to return to work. Plaintiff Hernandez Lopez was never called to return to work.

***Required Personal Protective Equipment***

69. The Plaintiffs and their coworkers were required to wear a brightly colored vest, hard hat, gloves, boots and safety glasses to work each day. The project manager Hector conducted mandatory weekly safety meetings in which he told the Plaintiffs and other workers that the safety equipment was necessary and that if they did not bring it they would not be allowed to work. They were also told by various people in the office to bring that equipment to work and it was posted on signs around the jobsite that the equipment was required.

70. The Plaintiffs and their coworkers had to purchase these required safety items and were not reimbursed for the cost, which was around $200 each.

71. None of the Defendants ever offered to provide any of the safety equipment to Plaintiffs free of charge.

72. Plaintiff Hernandez Lopez had to purchase new gloves on a weekly basis because they wore out quickly. Each pair cost approximately $5 and he bought them from a store at the solar farm.

73. Defendants were required to provide the safety equipment described in paragraphs 69 through 72 to Plaintiffs and their coworkers free of charge pursuant to 29 CFR § 1926.95(d)(6) and 13 NCAC 07F. 0201.

74. The safety equipment described in paragraphs 69 through72 were an incident of and necessary to Defendants' employment of Plaintiffs. The expenses incurred by Plaintiffs to

13

purchase hard hats, vests, boots, gloves and safety glasses were primarily for the benefit or convenience of Defendants.

### Hours and Recordkeeping

75. On a typical day, the named Plaintiffs and their coworkers worked from 7 a.m. until noon, took a lunch break from 12 to 1 p.m., and then continued working until about 6 p.m., sometimes later. They and their coworkers worked Monday through Saturday and regularly worked more than forty hours per week.

76. Each morning when the Plaintiffs arrived at the jobsite they would wait outside the fence until the security guard unlocked it, which usually occurred around 7 a.m.

77. When the Plaintiffs arrived at the jobsite each morning and left each evening they had to sign in and out with a woman at the entrance. At first they would write their names in a journal that the woman maintained, then later they used numbers either printed on a card or their helmets to check in and out instead.

78. The woman at the entrance would write down the time that the Plaintiffs and their coworkers arrived and left.  However, when Plaintiffs or their coworkers arrived late Defendants' practice was to dock some of their time for that day.  For example, Plaintiff Menjivar Argeta arrived around 7:05 a.m. on at least three occasions. Rather than recording his start time as 7:05 a.m., the woman at the entrance recorded his start time as 7:30 a.m.

79. Upon information and belief, Defendant Mendoza obtained the records of hours worked from the woman at the entrance to use to complete payroll each week.

**Compensation**

80. Plaintiffs and their coworkers were promised by Defendants Mendoza and ECCS that they would receive $10 per hour as a starting wage.

81. Plaintiffs and their coworkers had an express, constructive, or implied agreement that Defendants would pay them wages at the rates required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the Plaintiffs and their coworkers performed compensable work under the FLSA and/or NCWHA for Defendants.

82. Upon information and belief, Defendants disclosed to Plaintiffs and their similarly situated co-workers that the promised wage for the work they were to perform would be at least 1 ½ times the regular hourly rate, by posting this information in the mobile office and/or other locations on the jobsite.

83. Plaintiffs and their coworkers were paid a flat hourly rate for all hours worked, even when they worked in excess of forty hours in one workweek. For example, Plaintiff Hernandez Lopez's paycheck from March 4, 2016 shows that he worked 63.5 hours for the week and was paid $10 per hour.  Plaintiff Menjivar Argeta's paycheck for the same week shows that he worked 52 hours and was paid $10 per hour.

84. The Plaintiffs and their coworkers received their paychecks each Friday from a woman in the mobile office.

85. The paychecks included the following information:

    a.  Name of employer, East Carolina Commercial Services;

    b.  Address of employer, PO Box 902, Graham, North Carolina, 27253;

    c.  Name of employee;

    d.  Date;

    e.  Hours during the payperiod;

    f.  Hourly rate of pay;

15

    g.  Deductions;

    h.  Gross pay for that payperiod;

    i.  Gross pay for the year;

    j.  Total pay for that check; and

    k.  Total pay for the year.

86. Each week there was a deduction from Plaintiffs' paychecks identified as "WC." The deduction for WC was equal to 5% of the gross pay.

87. Upon information and belief, the "WC" deduction was for Workers' Compensation Insurance.

88. At all times relevant to this lawsuit, Defendants ATS and ECCS had workers' compensation insurance policies for work performed in North Carolina but Defendant SG did not.

89. The Plaintiffs did not provide written authorization for any deductions from their pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

## OVERTIME COLLECTIVE ACTION

90. The named Plaintiffs seek to bring their claims under the Fair Labor Standards Act as a collective action on behalf of themselves and all other similarly situated employees of one or more Defendants who were required to work in excess of forty hours per week for a flat hourly rate and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b). ("Overtime Collective Action").  They seek unpaid overtime wages and liquidated damages.

91. Plaintiffs and members of the Overtime Collective Action are similarly situated: they are all non-supervisory employees who worked for Defendants in the construction of IS46 and

were not compensated at one and one half times their regular rate of pay for overtime hours.

## PPE COLLECTIVE ACTION

92. Plaintiffs also seek to bring claims under the FLSA on behalf of themselves individually, and on behalf of all other similarly situated employees of one or more Defendants who were required to purchase and provide their own personal protective equipment (PPE) and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b). ("PPE Collective Action"). They seek unpaid minimum wages and liquidated damages.

93. Plaintiffs and members of the PPE Collective Action are similarly situated: they are all non-supervisory employees who worked for Defendants in the construction of IS46 and who had their pay brought below the minimum wage required by 29 U.S.C. § 206(a) during at least their first work week as a result of de facto deductions. These de facto deductions were the result of being required to purchase their own hard hats, vests, boots, gloves and safety glasses in violation of 29 C.F.R. § 1926.95(d)(6).

## NCWHA CLASS # 1 ALLEGATIONS

94. Plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.22, and 95-25.22(a1) ("NCWHA Class #1"). The NCWHA Class #1 consists of all non-supervisory workers who were employed by one or more Defendants to perform work in the construction of the solar farm known as IS46 in any pay period falling within two chronological years immediately preceding the date on which this action was filed and

continuing thereafter through the date on which final judgment is entered in this action and who did not receive all of their wages when due.

95. The NCWHA promised wage violations occurred when Defendants made deductions from the named Plaintiffs' and NCWHA Class #1 members' paychecks for Workers' Compensation insurance. In the alternative, if WC does not stand for Workers' Compensation, the promised wage violations occurred when Defendants made deductions from the named Plaintiffs' and NCWHA Class #1 members' paychecks without first obtaining written authorization as required by N.C. Gen. Stat. § 95-25.8.

96. The NCWHA promised wage violations also occurred when Defendants required the named Plaintiffs and members of the NCWHA Class #1 to purchase their own PPE, in violation of 29 C.F.R. § 1926.95(d)(6) and 13 N.C.A.C. Tit. 07F § 0201, without reimbursing them for those costs.  As a result of Defendants' failure to reimburse Plaintiffs and NCWHA Class #1 members for the cost of PPE,  Plaintiffs and NCWHA Class #1 members were not paid all wages when due in any work week immediately following such expenditures.

97. The NCWHA promised wage violations also occurred when Defendants failed to pay the named Plaintiffs and NCWHA Class #1 members for all hours worked because of their policy of docking work time when an employee arrived late.

98. The NCWHA Class #1 is so numerous and so geographically dispersed as to make joinder impractical. Upon information and belief, the class includes over 200 individuals. Many of the members in this class are not fluent in English and are unfamiliar with the American judicial system.  The relatively small size of the individual claims and the indigence of

them members of this class make the maintenance of separate actions by each members of this class not feasible.

99. The questions of law or fact which are common to the members of the NCWHA Class #1 and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are a) whether the deduction labeled as "WC" was for all or part of a Workers' Compensation premium, b) whether Defendants failed to obtain written authorization to make deductions for "WC" from their employees' pay, c) whether Defendants required Plaintiffs and members of the NCWHA Class #1 to purchase their own PPE, d) whether Defendants reimbursed Plaintiffs and members of the NCWHA Class #1 for the costs of PPE, d) whether the cost of PPE operated as a de facto deduction reducing Plaintiffs' and class members' pay below the promised wage, and e) whether Defendants failed to pay Plaintiffs and members of the NCWHA Class #1 for all hours worked when they docked employees' hours for arriving late.

100. The claims of Plaintiffs are typical of the claims of NCWHA Class #1 members under Rule 23(a)(3) and 23(b)(3), Fed.R.Civ.P., in that the named Plaintiffs claim they experienced deductions from their paychecks on a weekly basis for Workers Compensation insurance and/or that they experienced deductions from their paycheck on a weekly basis for which they did not provide written authorization.

101. The claims of Plaintiffs are also typical of the claims of NCWHA Class #1 members under Rule 23(a)(3) and 23(b)(3), Fed.R.Civ.P., in that the named Plaintiffs claim they were required to purchase their own PPE in order to work for Defendants and were not reimbursed for those costs.

19

102.     The claims of Plaintiffs are also typical of the claims of NCWHA Class #1 members under Rule 23(a)(3) and 23(b)(3), Fed.R.Civ.P., in that the named Plaintiffs claim they were subject to Defendants' policy of docking their hours worked when an employee arrived late to the job site and thus were not paid for all hours worked.

103.     Plaintiffs' interest in the claims is in no way antagonistic or adverse to those of other NCWHA Class #1 members.

**NCWHA CLASS #2 ALLEGATIONS**

104.  Plaintiffs also seek to represent a class of persons under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.22, and 95-25.22(a1) ("NCWHA Class #2").  The NCWHA Class #2 consists of all non-supervisory workers who were employed by one or more Defendants to perform work in the construction of the solar farm known as IS46 in any pay period falling within two chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action and who did not receive all of their wages when due at the wage rate disclosed to them pursuant to N.C. Gen. Stat §§ 95-25.13(1)-(2) for hours worked in excess of 40 hours in one workweek.

105.     The NCWHA Class #2 is so numerous and so geographically dispersed as to make joinder impractical. Upon information and belief, the class includes over 200 individuals. Many of the members in this class are not fluent in English and are unfamiliar with the American judicial system.  The relatively small size of the individual claims and the indigence of them members of this class make the maintenance of separate actions by each members of this class not feasible.

106.    The questions of law or fact which are common to the members of the NCWHA

Class #2 and which predominate over any other questions affecting only individual

members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are a) whether

Defendants disclosed to Plaintiffs and members of the NCWHA Class #2 pursuant to

N.C.Gen.Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. Tit. 12 § .0803 that they would pay

wages free and clear at one and one-half the regular hourly rate for all hours worked in

excess of 40 in the same workweek, and b) whether Defendants violated the NCWHA's

promised wage provision by failing to pay wages free and clear at the rate Defendants

disclosed to them for all hours worked in excess of 40 in the same workweek.

107.    The claims of Plaintiffs are typical of the claims of the NCWHA Class #2 under Rule

23(a)(3), Fed.R.Civ.P., and those typical claims predominate over any questions affecting

only individual class members.

108.    A class action under Rule 23(b)(3) is superior to other available methods of

adjudicating this controversy because the common issues of law and fact, as well as the

relatively small size of the individual claims of each member of the classes, substantially

diminish the interest of members of the classes in individually controlling the prosecution

of separate actions. Plaintiffs' interests in the claims are in no way antagonistic or adverse

to those of other class members.

109.    Plaintiff will fairly and adequately represent the interests of the NCWHA Class #1

defined in ¶ 94 above, as well as the interests of the NCWHA Class #2 defined in ¶ 104 of

the Complaint.  The undersigned counsel Clermont Ripley and Carol Brooke are

experienced litigators who have been named counsel for many class actions involving

similar claims to those raised in this action.

## FIRST CLAIM FOR RELIEF: FLSA OVERTIME

110.  Paragraphs 1 through 109 are realleged and incorporated by reference by the named Plaintiffs and members of the FLSA collective actions described in ¶ 90 which they seek to represent pursuant to 29 U.S.C. § 216(b).

111.  Defendants willfully failed to pay Plaintiffs and members of the Overtime Collective Action at least one and one-half times the regular rate of pay for each hour worked over forty (40) in a single workweek, in violation of 29 U.S.C. § 207(a)(1).

112.  The overtime violations described in ¶ 111 occurred because Defendants paid Plaintiffs and members of the Overtime Collective Action a flat hourly wage without paying them the required premium for overtime hours.

113.  Upon information and belief, Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the Fair Labor Standards Act and its accompanying regulations.

114.  As a result of Defendants' actions, Plaintiffs and members of the Overtime Collective Action have suffered damages in the form of unpaid overtime damages and liquidated damages that may be recovered from Defendants, jointly and severally, under 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF: FLSA MINIMUM WAGE

115.  Paragraphs 1 through 114 are realleged and incorporated by reference by the named Plaintiffs and members of the FLSA collective action described in ¶ 92 which they seek to represent pursuant to 29 U.S.C. § 216(b).

116. Defendants willfully failed to pay Plaintiffs and members of the PPE Collective Action at least the required federal minimum wage for all hours worked, in violation of 29 U.S.C. § 206.

117. The minimum wage violations described in ¶ 116 occurred because Defendants required Plaintiffs and PPE Collective Action Members to pay for their own PPE, which was for the benefit or convenience of the employer, and which operated as a de facto deduction from their pay which, resulting in payment of wages at a rate less than the minimum wage rates required by the FLSA, in violation of 29 U.S.C. § 206 and 29 C.F.R. § 531.37(a).

118. Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the FLSA and its accompanying regulations.

119. As a result of Defendants' action, Plaintiffs and the class of similarly situated persons defined in ¶ 92 have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under 29 U.S.C. § 216(b).

## THIRD CLAIM FOR RELIEF: NCWHA #1

120. Paragraphs 1 through 119are realleged and incorporated by reference by the named Plaintiffs and members of the NCWHA Class #1 defined in ¶ 94 which Plaintiffs seek to represent.

121. Defendants failed to pay Plaintiffs and members of the NCWHA Class #1 at least the promised wage for each hour or part of an hour that Defendants allowed, suffered, and/or required Plaintiffs and NCWHA Class #1 members to work for Defendants for each workweek in which they failed to pay Plaintiffs and class members for all hours worked and/or made a deduction or de facto deduction from Plaintiffs' and class members' paychecks, in violation of N.C.G.S. § 95-25.6.

122. As a result of these actions of the Defendants in violation of their rights under the NCWHA, named Plaintiffs and NCWHA Class #1 members have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## FOURTH CLAIM FOR RELIEF: NCWHA #2

123. Paragraphs 1 through 122 are realleged and incorporated by reference by the named Plaintiffs and members of the NCWHA Class #2 defined in ¶ 104 which Plaintiffs seek to represent.

124. Defendants failed to pay Plaintiffs and members of the NCWHA Class #2 at least the promised wage of one and one half times their regular rate of pay for all hours worked in excess of forty hours in one workweek, in violation of N.C.G.S. §95-25.6.

125. As a result of these actions of the Defendants in violation of their rights under the NCWHA, named Plaintiffs and NCWHA Class #2 members have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## CLAIM FOR DECLARATORY RELIEF

126. Paragraphs 1 through 125 are realleged and incorporated by reference.

127. The parties named in this action and members of the FLSA collective actions and NCWHA classes are in dispute as to their respective rights, privileges, obligations and liabilities under the NCWHA and FLSA and require declaratory relief as to what those respective rights, privileges, obligations and liabilities are.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court:

1. Enter an order finding that this Court has jurisdiction over Plaintiffs' claims;

2. Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the FLSA statutory classes defined in ¶¶ 90 and 92 of this Complaint;

3. Certify this action as a class action under Rule 23(b)(3), Fed.R.Civ.P. for back wages and liquidated damages under N.C.G.S. § 95-25.22 with respect to the NCWHA class defined in ¶ 94;

4. Certify this action as a class action under Rule 23(b)(3), Fed.R.Civ.P. for damages under N.C.G.S. § 95-25.22 with respect to the NCWHA class defined in ¶ 104;

5. Enter a judgment against Defendants Alpha Technologies Services, Inc., East Carolina Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶ 90 of this Complaint for compensatory damages under the First Claim for Relief in an amount equal to the total of the unpaid overtime wages due the named Plaintiffs and each of those other similarly situated employees of Defendants under 29 U.S.C. § 207(a), plus an equal amount as liquidated damages under 29 U.S.C. § 216(b);

6. Enter a judgment against Defendants Alpha Technologies Services, Inc., East Carolina Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶ 92 of this Complaint for compensatory damages under the Second Claim for Relief in an amount equal to the total of the unpaid minimum wages due the named Plaintiffs and each of those other

25

similarly situated employees of Defendants under 29 U.S.C. § 206(a)(1), plus an

equal amount as liquidated damages under 29 U.S.C. § 216(b);

7. Enter judgment against Defendants Alpha Technologies Services, Inc., East Carolina

Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos,

jointly and severally, and in favor of the named Plaintiffs and all other similarly

situated employees of Defendants described in ¶ 94 of this Complaint for

compensatory damages under the Third Claim for Relief in an amount equal to the

total of the unpaid wages and unauthorized wage deductions due Plaintiffs and the

class of workers under N.C.G.S. §§ 95-24.22(a), plus an equal additional amount as

liquidated damages under N.C.G.S. § 95-25.22(a)(1) plus interest in the manner and

at the rate prescribed in N.C.G.S. § 95-25.22(a);

8. Enter judgment against Defendants Alpha Technologies Services, Inc., East Carolina

Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos,

jointly and severally, and in favor of the named Plaintiffs and all other similarly

situated employees of Defendants described in ¶ 104 of this Complaint for

compensatory damages under the Fourth Claim for Relief in an amount equal to the

total of the unpaid wages due Plaintiffs and the class of workers under N.C.G.S. §§

95-24.22(a), plus an equal additional amount as liquidated damages under N.C.G.S. §

95-25.22(a)(1) plus interest in the manner and at the rate prescribed in N.C.G.S. § 95-

25.22(a);

7. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that

Defendants violated the Plaintiffs' rights under the FLSA and NCWHA and their

implementing rules and regulations by misclassifying Plaintiffs and their coworkers as independent contractors rather than employees.

8. Award Plaintiff the costs of this action against Defendants Alpha Technologies Services, Inc., East Carolina Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos, jointly and severally;

10. Award Plaintiff reasonable attorneys' fees under 29 U.S.C. § 216(b), N.C.G.S. § 95-25.22(d), and N.C.G.S. § 95-243 against Defendants Alpha Technologies Services, Inc., East Carolina Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos, jointly and severally;

11. Award against Defendants Alpha Technologies Services, Inc., East Carolina Commercial Services, LLC, Solar Guys, Inc., Cesar Mendoza and Jorge Ramos, jointly and severally, and in favor of the named Plaintiffs and the classes of workers they seek to represent, prejudgment and post judgment interest as allowed by law; and

12. Grant such other relief as the Court may deem just and proper.


Respectfully submitted, this the 20th day of December, 2017.


       NORTH CAROLINA JUSTICE CENTER
       P.O. Box 28068
       Raleigh, NC  27611
       919-856-2154
       919-856-2175 (fax)

BY:    /s/ Clermont F. Ripley       /s/ Carol L. Brooke
       Clermont F. Ripley         Carol L. Brooke
       clermont@ncjustice.org     carol@ncjustice.org
       Attorney at Law           Attorney at Law
       NC Bar # 36761           NC Bar # 29126