RODRIGUEZ MARTINEZ, et al. )
)
      Plaintiffs, )
)
        vs. )
)
ALPHA TECHNOLOGIES SERVICES, )
INC., et al. )
)
      Defendants. )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION, FOR DISCLOSURE OF CONTACT INFORMATION FOR POTENTIAL OPT-IN PLAINTIFFS, AND TO DISTRIBUTE COURT-APPROVED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

## I.    STATEMENT OF THE CASE

The First Amended Class and Collective Action Complaint ("Am. Compl."), filed on January 10, 2018, alleges that Plaintiffs were jointly employed in the construction of a solar farm in Hope Mills, North Carolina in 2015 and 2016 by the Defendants, Alpha Technologies Services, Inc. ("ATS"), East Carolina Commercial Services, LLC ("ECCS"), Cesar Mendoza ("Mendoza"), Solar Guys, Inc. ("SGI"), and Jorge Ramos ("Ramos"). Am. Compl. ¶¶ 8-29. The named Plaintiffs, Pedro Rodriguez Martinez, Mateo Hernandez Lopez and Elmer Menjivar Argeta, allege that while they were employed at the solar farm, they and their similarly situated coworkers suffered violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.* Specifically, they allege that Defendants failed to pay them and all other similarly situated employees the proper overtime rate, made unauthorized and illegal wage deductions from their

pay, required them to purchase their own personal protective equipment ("PPE"), and failed to pay the promised wage for all hours worked. Am. Compl. ¶¶ 1,111-12, 116-17, 121, 124.

Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees through two separate FLSA collective actions. *Id.* ¶¶ 90 – 93; 29 U.S.C. § 216(b). The first one covers those employees who, like Plaintiffs, were required to work in excess of forty hours per week for a flat hourly rate, but without being compensated at one and one-half times their regular rate of pay for overtime hours. *Id.* ¶ 90 (the "Overtime Collective Action"). The second collective action covers those employees who, like Plaintiffs, were required to purchase and provide their own PPE without being reimbursed for those costs. *Id.* at ¶ 92 (the "PPE Collective Action").

Defendants ATS, ECCS, and Mendoza have filed Answers and Affirmative Defenses (DE 34 and 37) and Defendants SG and Ramos filed a Motion to Dismiss, which has not been ruled on. DE 32. The parties have engaged in an initial scheduling conference pursuant to Rule 26(f), Fed. R. Civ. P., in which Plaintiffs agreed to move for conditional certification of the FLSA claims by June 15, 2018. DE 44.

## II.     STATEMENT OF RELEVANT FACTS

Defendants built a solar farm in Hope Mills, Cumberland County, North Carolina, known as Innovative Solar 46, IS46 and Principal Sunrise IV ("IS46" or the "Solar Farm"). Am. Compl. ¶ 30. During the Solar Farm's construction, Defendant ATS acted as the general contractor, hiring and managing all subcontractors and ensuring that all staffing needs were met. *Id.* at ¶ 35. Defendant ATS contracted with Defendant Ramos and his company, Defendant SG, to provide most of the construction labor. *Id.* at ¶ 36. Defendants Ramos and SG subcontracted with

Defendant Mendoza and his company, Defendant ECCS, to provide additional workers. *Id*. at ¶ 37.

Plaintiffs worked on the Solar Farm project between December 2015 and May 2016. *Id*. at ¶¶ 8 -10. Plaintiff Menjivar Argeta learned of the job through an advertisement he saw on Facebook. *Id*. at ¶ 49; Declaration of Elmer Menjivar Argeta, attached as Exhibit 1, ¶ 3. When Plaintiff Menjivar Argeta responded to the advertisement, he was instructed to come to the Solar Farm to apply in person and bring his own boots, hard hat, vest, safety glasses, and gloves. Am. Compl. ¶ 49; Ex. 1, ¶ 3. Plaintiffs Rodriguez Martinez and Hernandez Lopez learned about the job opportunity from friends and went to the Solar Farm to apply in person. Am. Compl. ¶¶ 55, 58; Declaration of Mateo Hernandez Lopez, attached as Exhibit 2, ¶ 3. The named Plaintiffs and their coworkers were required to attend weekly safety meetings, where they were told that they would not be allowed to work if they did not have the required vest, boots, hard hat, safety glasses and gloves. Am. Compl. ¶ 62; Ex. 1, ¶ 5; Ex. 2, ¶ 5. There were also signs posted around the jobsite about the required safety equipment and people in the office instructed Plaintiffs that they were required to bring the safety equipment to work each day. Ex. 1, ¶. 5; Ex. 2, ¶ 5. Each of the Plaintiffs purchased their own safety gear for around $200. They were not reimbursed for the cost of purchasing that gear, and none of them were ever told by any of their employers that the safety gear could be provided to them free of charge. Am. Compl. ¶¶ 70-71; Ex. 1, ¶ 6; Ex. 2, ¶ 6. These de facto deductions brought their pay below the minimum wage required by 29 U.S.C. § 206(a) during at least their first work week. Am. Compl., ¶ 93, 117.

Plaintiffs and their coworkers regularly worked more than forty hours per week, usually beginning work around 7:00 a.m. and working until 6:00 p.m., with a one hour lunch break, six days per week. *Id*. ¶ 75; Ex. 1, ¶ 7; Ex. 2, ¶ 7. Plaintiffs and their coworkers were paid a flat

hourly rate for all hours worked, including when they worked over forty hours in a workweek. Am. Compl., ¶ 83; Ex. 1, ¶ 8; Ex. 2, ¶ 8.

## III.  **ARGUMENT**

### A.  **Plaintiffs Have Met The Minimal Burden Required To Establish That These FLSA Statutory Class Actions Should Be Conditionally Certified**

The FLSA allows one or more individual employees to file an action against their employer for unpaid minimum wage and/or overtime pay on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). In order for the similarly situated colleagues to participate as party-plaintiffs in the action, they must file with the court a written consent indicating their desire to become a party with the court. *Id.* According to the Supreme Court, the purpose of conditional certification of a FLSA collective action is "to facilitate notice to potential class members so they may have the opportunity to opt in" *Rosinbaum v. Flowers Foods, Inc.*, 238 F.Supp. 3d 738, 743 (E.D.N.C. 2017) (Flanagan, J) (*citing Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

This court has traditionally used a two-step process to certify a representative action under 29 U.S.C. § 216(b). *Rosinbaum*, 238 F.Supp.3d at 743. "At the notice stage, early in a case, the court conditionally certifies the class based on the limited record before it and approves notice to putative class members of their right to opt in." *Id.*; *De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654-56 (E.D.N.C. 2004) (finding that plaintiffs and potential opt ins were similarly situated based on the pleadings and granting conditional certification before discovery took place). This preliminary pronouncement is "usually based only on the pleadings and any affidavits that have been submitted" during the initial stages of litigation. *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1214 (5th Cir. 1995); *De Luna-Guerrero*, 338 F.Supp. 2d at 654-56 (finding that plaintiffs and potential opt ins were similarly

situated based on the pleadings and granting conditional certification before discovery took place.). "The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Romero v. Mountaire Farms*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011) (*citing Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001)); *see also Reeves v. Alliant Techsystems*, 77 F. Supp. 2d. 242,  247 (D.R.I. 1999) ("plaintiffs can meet this burden by simply alleging that putative class members were together the victims of a single decision, policy, or plan that violated the law").

The second phase of the two-tiered analysis takes place once discovery is completed and the case is ready for trial, but only if the party opposing statutory class certification files a motion for decertification. *Romero,* 796 F. Supp. 2d at 705. Because discovery will have been completed at that point and there will likely be much more information before the court, the court is better able to make a factual determination as to whether the proposed class is "similarly situated." *Rawls v. Augustine Home Health Care, Inc*., 244 F.R.D. 298 (D.Md. 2007).

"The Fourth Circuit has not announced a test to determine whether employees are similarly situated under the FLSA." *Rosinbaum*, 238 F.Supp.3d at 743.  Courts in this district have addressed the issue several times, however, and have held that to be similarly situated in the context of FLSA collective actions putative class members must "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Romero*, 796 F.Supp. 2d at 705 (internal citations omitted); *see also Rosinbaum*, 238 F.Supp.3d at 743 (collecting cases). Allegations in the First Amended Complaint and the declarations filed with this motion provide sufficient evidence to surpass the "lenient standard" for conditional

certification for the statutory classes Plaintiffs seek to represent under § 216(b) at this stage of litigation. Plaintiffs and their similarly situated coworkers raise similar legal issues based on policies and practices that affected all of them, these violations occurred in a practically identical factual setting, and Plaintiffs and the members of the putative collective action seek the same relief.

    *i.*      *Plaintiffs and the putative class members were employees.*

As a preliminary matter, there is sufficient evidence to demonstrate that although they may have been classified as independent contractors, the named Plaintiffs and putative class members "will prevail in demonstrating their claimed status as employees" who are protected by the FLSA and may take advantage of the representative action procedure in § 216(b). *Rosinbaum*, 738 F.Supp.3d at 745. "An employee is defined as 'any individual employed by an employer,' [29 U.S.C.] § 203(e)(1), and an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee, *id.*§ 203(d).'" *Schultz. v. Capital Intern. Sec., Inc*., 466 F.3d 298, 304 (4th Cir. 2006). "To determine whether an individual qualifies as an employee under the FLSA, the court must consider the economic realities to determine whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." *Id*. at 743 (internal quotations removed) (*citing Schultz*, 466 F.3d at 304). To help distinguish between who is an employee and who is truly an independent contractor, courts use a six-factor test in which no factor is dispositive. *Schultz*, 466 F.3d at 304.

> The factors are (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence

of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.*

The allegations in the First Amended Complaint and Plaintiffs' declarations demonstrate that the Plaintiffs and putative class members were clearly economically dependent on the Defendants and were not in business for themselves. Their access to the job site was restricted, they were checked-in and out of work each day, their hours were tracked, they were paid an hourly rate rather than a contract rate, they did not determine their own work schedules, and they were required to attend weekly safety meetings. Ex. 1, ¶¶ 4, 5, 7, 8; Ex. 2, ¶¶ 4, 5, 7, 8. They were employed doing basic manual labor and their jobs were advertised as unskilled. Am. Compl. ¶ 48. They received instructions about what to do and how to do it from multiple supervisors. *Id.* ¶¶ 52, 56. They applied for the jobs, were hired, and eventually fired or laid off all in the manner of employees. *Id.* ¶¶ 49, 55, 58, 66-8; Ex. 1, ¶ 3; Ex. 2, ¶ 3. They received traditional paychecks on a weekly basis. Am. Compl. ¶ 85. Although they were required to purchase and provide their own protective gear, the necessary tools and equipment were provided by Defendants; specifically, the nail guns (Am. Compl. ¶ 53), shovels (*id.* ¶ 61), trucks and heavy machinery (*id.* ¶¶ 57, 60) and other materials needed to build the solar panels (*id.* ¶ 54) were provided to them. Finally, the work the named Plaintiffs and their coworkers did was integral to the Defendants' businesses. *Id.* ¶ 64. The Court should find, as it did in *Rosinbaum*, that there is "substantial evidence that members of the proposed class[es] may qualify as employees under the FLSA." 238 F. Supp. 3d at 744.

ii. *Plaintiffs and putative Overtime Collective Action members are similarly situated.*

This Court should also find that the named Plaintiffs and the putative Overtime Collective Action members are similarly situated with regard to their legal claims. Plaintiffs seek

7

to represent themselves individually and "all similarly situated individuals employed by Defendant East Carolina Commercial Services individually or jointly with one or more of the other Defendants in the construction of IS46 who were required to work in excess of 40 hours per week for a flat hourly rate without receiving the required premium for overtime hours and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b)." *See* Plaintiffs' Motion for Conditional Certification of a Collective Action, For Disclosure of Contact Information for Potential Opt-in Plaintiffs and to Distribute Court-Approved Notice Pursuant to 29 U.S.C. § 216(b) ("Pl's 216(b) Motion"); *see also* Am. Compl., ¶ 90 (slightly different class definition). The sworn declarations and allegations of Plaintiffs demonstrate that they and the putative members of the Overtime Collective Action were subject to the same policy or practice: Defendants required employees to work in excess of 40 hours per week for a flat hourly rate without paying them the required premium for overtime hours. Am. Compl., ¶¶ 75, 83; Ex. 1, ¶ 8; Ex. 2, ¶ 8. As a result of this policy or practice of Defendants, Plaintiffs and putative members of the Overtime Collective Action were deprived of overtime wages due to them under 29 U.S.C. § 207(a)(1) throughout the time that they were employed by Defendants. Therefore, this Court should find that Plaintiffs are similarly situated to the putative members of the Overtime Collective Action.

      iii.    *Plaintiffs and putative PPE Collective Action members are similarly situated.*

Plaintiffs seek to represent a second collective action under the FLSA. The PPE Collective Action includes themselves as individuals and "all similarly situated individuals employed by Defendant East Carolina Commercial Services individually or jointly with one or more of the other Defendants in the construction of IS46 who were required to purchase and provide their own hard hats, vests, boots, safety glasses and/or gloves and who timely file (or

8

have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b)." Pl's 216(b) Motion*; see also* Am. Compl. ¶ 92 (slightly different definition). The sworn declarations and allegations of Plaintiffs demonstrate they and the putative members of the PPE Collective Action were subject to the same policy or practice: Defendants required employees to purchase their own protective equipment without reimbursing them for that cost. Am. Compl., ¶¶ 69-71; Ex. 1, ¶¶ 5-6; Ex. 2, ¶¶ 5-6.

FLSA regulations make it clear that an employer may not deduct from an employee's pay the cost of furnishing facilities which primarily benefit the employer, if that deduction brings the employee's wages below the minimum wage. 29 C.F.R. §§ 531.35, 531.3(d)(1), 531.36(b). Courts in this district have held that "failing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek." *Gaxiola v. Williams Seafood of Arapahoe, Inc*., 776 F.Supp.2d 117, 125 (E.D.N.C. 2011). "Known as a de facto deduction, there is no legal difference between deducting a cost directly from the workers' wages and shifting a cost, which they could not deduct, for the employee to bear." *Id., quoting Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002). The hard hats, gloves, vests, boots, and safety glasses which the Plaintiffs were required to purchase and provide on their own were "primarily for the benefit or convenience of the employer" because they were required to be provided by employers free of charge by the Occupational Safety and Health Administration regulations for construction. *See* 29 C.F.R. § 1926.15. The PPE was part of a uniform which employees were required to wear and/or they were "tools of the trade," specifically required for the performance of the employers' work. 29 C.F.R. §§ 531.35, 531.3(d)(2); *De-Luna Guerrero*, 338 F. Supp.2d at 656, 57.

In the instant case, Plaintiffs allege they were paid $10 per hour, or $400 for forty hours, and spent between a minimum of $100 to around $200 on equipment that was for the benefit of their employer in order to begin working. Am. Compl. ¶ 70; Ex. 1, ¶¶ 6-8; Ex. 2, ¶¶ 6-8. Minimum wage for 40 hours of work is $290 (40 x $7.25). Therefore any deduction or de facto deduction for personal protective equipment of greater than $110 resulted in a minimum wage violation for each employee ($400 - $290 = $110). This Court should find that Plaintiffs are similarly situated to the putative members of the PPE Collective Action because as a result of Defendants' policy or practice of requiring workers at the Solar Farm to purchase and provide their own safety gear, the wages of Plaintiffs and putative members of the PPE Collective Action were brought below the minimum wage required by 29 U.S.C. § 206(a) during at least their first workweek. Am. Compl. ¶ 93.

In addition to being similarly situated with regard to their legal claims, the allegations in the First Amended Complaint and declarations demonstrate that Plaintiffs and their co-workers in the putative PPE Collective Action have legal claims that arise from a "manageably similar factual setting." *Rosinbaum*, 738 F.Supp. 3d at 747. Here, the Plaintiffs and their coworkers were all told that they had to wear a brightly colored vest, hard hat, gloves, boots, and safety glasses to work each day. This was reemphasized on a weekly basis at site-wide safety meetings, as well as on signs around the job site. Am. Compl. ¶ 69. Their hourly wage, at least at the beginning of work on the Solar Farm, was advertised as $10 per hour. *Id.* at ¶¶ 48, 58, 80. And they were all required to purchase the equipment on their own and no one ever reimbursed them for it. *Id.* at ¶¶ 70-71. Similarly situated means "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Luna-Guerrero*, 338 F. Supp. 2d at 654. Although "[s]ome individualized inquiry may be necessary" to determine how much money

each class member spent on required safety equipment, the policy and factual setting giving rise to the FLSA claim are very similar.  In the context of a traditional class action pursuant to Rule 23, Fed. R. Civ. P., a class representative's claims may be typical of the potential class members even when there are "differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative." *Haywood v. Barnes*, 109 F.R.D. 568, 578 (E.D.N.C. 1986). In the context of a FLSA collective action, where the standard of conditional certification is even more lenient, such differences can be present and the class representatives and potential class members will still be similarly situated.  *Romero*, 796. F. Supp. 2d at 705 ("Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination."). Here, the amount of unpaid minimum wages and overtime wages each Plaintiff and opt-in plaintiff is entitled to will be different because each worked for a different length of time, there may have been some variations in their weekly schedules, and they may have paid different amounts to purchase their personal protective equipment, but the unlawful policies to which they were subjected and the nature of the relief is identical. For these reasons, conditional certification is warranted.

### B. The Court Should Exercise Its Discretion Under 29 U.S.C. §216(b) to Approve and Distribute the Requested Class Notice

This Court's authorization of notice to potential collective action members at this stage of litigation would appropriately advance the remedial goals of the FLSA and promote judicial efficiency. Section 216(b) of the FLSA authorizes trial courts to provide that court-approved notice be sent to potential Plaintiffs to inform them of an action and allow them an opportunity to opt in. *Hoffman-LaRoche,* 493 U.S. at 169-72. Indeed, the point of conditional certification of FLSA collective actions is to facilitate notice to putative class members. *Id. at 170*. "The benefits of the class action provisions of § 16(b) 'depend on employees receiving accurate and timely

11

notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir.year?), *cert denied*, 506 U.S. 1021 (1992). Distributing court-authorized notice early in the case promotes the "broad remedial purpose" of the FLSA and promotes efficient case management by insuring that similar claims are combined in one proceeding. *Dybach v. State of Fla. Dept of Corrections,* 942 F.2d 1562, 1567 (11th Cir. 1991); *Rosinbaum,* 238 F.Supp. 3d at 744 (acknowledging the Supreme Court's "apparent preference for speedy notice to potential class members" so that they may opt in to stop the statute of limitations from running). "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide putative class members with notice of the lawsuit and their right to opt in." *Serrano Diaz v. Quality Crab Co., Inc.*, No. 2:10-CV-15, 2011 WL 4498939 at *2 (E.D.N.C. Sept. 27, 2011).

Accordingly, Plaintiffs respectfully ask the Court to exercise its discretion and move expeditiously to approve distribution of the proposed notice, attached as Exhibit 3, and proposed consent forms, attached as Exhibit 4, to potential opt-in plaintiffs in English and Spanish. Without some form of court-approved notice in a language that they can understand, the putative class members have no means of making any "informed decisions about whether to participate" in this statutory class action. *Hoffman-LaRoche*, 493 U.S. at 170. The proposed notice is a condensed and simplified version of the notices that Plaintiffs' counsel have had approved by the Eastern District of North Carolina in prior cases in order to make it more likely that putative class members read the notice and understand their rights. However, Plaintiffs are also submitting an alternative notice, attached as Exhibit 5, which is almost identical to the notice approved by this Court in *Arellano Galvan v. San Jose Mexican Restaurant of NC*, No. 7:16-cv-39, 2016 WL 7264100 (E.D.N.C.

December 15, 2016), in order to avoid delay in authorizing a notice should this Court, in its discretion, find that the proposed notice attached as Exhibit 3 is lacking.

Plaintiffs believe that Defendants are unlikely to have complete and accurate addresses for the putative class members because the paystubs provided to Plaintiffs by Defendants ECCS and Mendoza do not contain addresses. Am. Compl. ¶ 89. Therefore, in addition to being permitted to send notice and consent forms through U.S. mail, Plaintiffs request permission to send notice via email and to post the notice via Facebook. In *Velasquez-Monterrosa v. Mi Casita Restaurants*, a case that involved a collective action on behalf of restaurant workers, a court in this District approved plaintiff's request to post a notice at the restaurant locations because allowing such posting would promote the goals of judicial economy and efficiency in collective actions based on the "high turnover and often-brief nature of restaurant work." No. 5:14-cv-448, 2016 WL 1703351 at *4 (E.D.N.C. April 27, 2016). In the instant case, posting at the job-site is not an option because construction ended in 2016, but the work was similarly brief and with high turnover. Am. Compl. ¶¶ 66-68. In addition, Defendants ECCS and Mendoza advertised the jobs and reached workers through Facebook. *Id*. at ¶ 48. Other district courts have approved similar forms of notice. *See e.g., Lima v. Int'l Catastrophe Solutions, Inc.*, 293 F. Supp.2d 793, 802 (E.D. La. 2007) (allowing publication, radio and internet announcements, and contacts with the consulate). Accordingly, Plaintiff respectfully asks the Court to move expeditiously to authorize notice to potential class members.

Plaintiffs also request that this Court grant their counsel a period of six months during which to distribute notice and file opt-in Plaintiffs' consent forms with this Court. The putative class members are low-income, many are Spanish speaking, and because the construction of the Solar Farm has ended they are now dispersed. This six month period would begin on the date on

13

which Defendants release potential class members' contact information to Plaintiffs' counsel. In order for court-authorized notice to offer a meaningful opportunity to join this suit, Plaintiffs' counsel will need at least six months to coordinate locating and effectively notifying potential class members of their opportunity to opt-in to this action. *Arellano Galvan v. San Jose Mexican Restaurant of NC, Inc.*, No. 7:16-CV-39-FL, 2016 WL 6205783 (E.D.N.C. Oct. 24, 2016) (granting plaintiffs' request for a six-month opt-in period where defendants are unlikely to have complete and accurate addresses for the putative class members).

### C. This Court Should Order Defendants to Provide the Names and Last Known Address of Potential Opt-in Plaintiffs

To facilitate the sending of notice and consent forms, the Plaintiffs respectfully move this Court for an order directing the Defendants to produce the full names, date(s) of employment, job title(s), last known addresses, email addresses, telephone number(s), and dates of birth of all putative collective action members no later than two weeks after entering its Order. In *Rosinbaum v. Flowers Foods*, the court issued a very similar order to the one requested by Plaintiffs, 238 F.Supp. 3d at 748, and in *Hoffman-LaRoche,* the Supreme Court held that it was appropriate for the district court to permit disclosure of the names and addresses of possible opt-in Plaintiffs. 493 U.S. at 170.

### IV. __CONCLUSION__

In accordance with 29 U.S.C. § 216(b) and the procedures set forth in *Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001), Plaintiffs requests that this Court conditionally certify two collective actions of the FLSA claims in Plaintiffs' Complaint. In addition, Plaintiffs requests that this Court approve for distribution the proposed Notice and proposed Consent to Sue form, attached as Exhibits 4 and 5, and  direct Defendants to produce the full names, date(s) of employment, job title(s), last known addresses, telephone numbers, and dates of birth of all

putative class members  Plaintiffs further request that this Court authorize Plaintiffs' counsel to distribute the court-approved notice to potential opt-in Plaintiffs during the six-month period subsequent to Defendants' release of potential class members' names and addresses to Plaintiffs' counsel.

Respectfully submitted, this the 19th day of June, 2018.

/s/ Clermont F. Ripley
Clermont F. Ripley
N.C. Bar No. 36761
Carol L. Brooke
N.C. Bar No. 29126
North Carolina Justice Center
PO Box 28068
Raleigh, NC 27611
919-856-2154
clermont@ncjustice.org

Dhamian A. Blue
N.C. Bar No. 31405
BLUE LLP
205 Fayetteville Street, Suite 300
Raleigh, NC 27601
919-833-1931
dab@bluellp.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2018, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following:

R. Daniel Boyce, dboyce@nexsenpruet.com

William H. Floyd, III, wfloyd@nexsenpruet.com

Amie F. Carmack, acarmack@morningstarlawgroup.com

John T. Kivus, jkivus@morningstarlawgroup.com

Shannon R. Joseph, sjoseph@morningstarlawgroup.com

Matthew J. Segal, matthew.segal@pacificalawgroup.com

Sarah C. Johnson, sarah.johnson@pacificalawgroup.com

Kathryn F. Abernethy, Katie.abernethy@thenoblelaw.com


Respectfully submitted,

<u>s/ Clermont F. Ripley</u>
Clermont F. Ripley
NC Bar # 36761
clermont@ncjustice.org
North Carolina Justice Center
P.O. Box 28068
Raleigh, North Carolina 27611
Phone: (919) 856-2154
Fax: (919) 856-2175

16