IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-628-FL

| | |
|---|---|
| PEDRO RODRIGUEZ MARTINEZ, MATEO HERNANDEZ LOPEZ, and ELMER MENJIVAR ARGETA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CESAR MENDOZA; JORGE RAMOS; EAST CAROLINA COMMERCIAL SERVICES, LLC; SOLAR GUYS, INC.; and ALPHA TECHNOLOGIES SERVICES, INC., <br><br> Defendants. | ORDER |

This matter is before the court on motion to dismiss filed by defendants Jorge Ramos ("Ramos") and Solar Guys, Inc. ("Solar Guys") (collectively, "movants"). (DE 32).[1] The motion has been fully briefed, and, in this posture, the issues presented are ripe for ruling. For reasons noted, the motion is granted.

**BACKGROUND**

Plaintiffs, claiming that have been misclassified as independent contractors, commenced this action December 20, 2017, seeking unpaid minimum wage, compensation for wage deductions,

---

[1] Also pending are plaintiffs' motion for conditional certification of collective action, (DE 49), and defendant Alpha Technologies Services, Inc.'s ("Alpha Services") motion to amend answer, (DE 53), which motions are not yet ripe.

equipment expenses, and overtime pay under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, et seq. ("NCWHA"). Movants filed the instant motion March 19, 2018, seeking dismissal on the ground that the complaint fails to allege facts sufficient to support conclusion that movants are "employers" or "joint employers" within the meaning of the FLSA,

## STATEMENT OF THE FACTS

The pertinent alleged facts viewed in the light most favorable to plaintiffs may be summarized as follows. Defendant Alpha Services is engaged in the business of construction and installation services. (DE 1 ¶ 14). Alpha Services is a member of non-party Alpha Group, which is "a global collective of companies that are dedicated to creating world-class powering solutions for communication, commercial, industrial and renewable energy markets." (Id. ¶ 16). Non-party Alpha Technologies Incorporated, another member of Alpha Group, performs construction and installation services through Alpha Services. (Id. ¶ 17).

Defendant East Carolina Commercial Services, LLC ("ECCS") is a North Carolina limited liability company engaged in the business of "large scale commercial solar installation services[.]" (Id. ¶¶ 18–19). Defendant Cesar Mendoza ("Mendoza") is ECCS's chief executive officer and managing member. (Id. ¶ 20).

Defendant Solar Guys describes itself as "a global provider of clean, renewable energy solutions . . . [Solar Guys] specializes in [engineering, procurement and construction] and [operations and maintenance] of utility-scale and commercial solar systems." (Id. ¶¶ 22–23). Defendant Ramos is Solar Guys's president and director. (Id. ¶ 24).

In April 2015, defendant Alpha Services entered into a contract with non-party Principal

Solar, Inc., to build a solar farm in Hope Mills, North Carolina ("the solar farm"). (Id. ¶ 30). Alpha Services was the general contractor for the solar farm and was responsible for hiring and managing all subcontractors and staff necessary to construct the solar farm. (Id. ¶¶ 31, 35). Alpha Solar contracted with movants to provide most of the labor needed to construct the solar farm. (Id. ¶ 36). Movants subcontracted with defendants Mendoza and ECCS to provide additional workers to perform manual labor at the solar farm. (Id. ¶ 37).

Defendants Mendoza and ECCS submitted weekly invoices to movants showing hours worked each week by Mendoza, ECCS, and their crew members. (Id. ¶ 38). Defendant Alpha services paid movants, and, in turn, movants used money from Alpha Services to pay Mendoza and ECCS an hourly rate for work performed by crew members supervised by and/or on the payroll of Mendoza and ECCS, which hourly rate did not include any overtime premium. (Id. ¶¶ 39, 41). Mendoza and ECCS did not have sufficient monetary resources on deposit in any financial institution to pay wages owed for any one workweek until defendants Alpha Services or Solar Guys paid for a week's work. (Id. ¶ 40).

According to the complaint, Alpha Services built a fence around the solar farm and hired security personnel to guard the solar farm. (Id. ¶ 45). Alpha Services also established an office building in a trailer on site. (Id. ¶ 46). Defendant Mendoza advertised on Facebook that ECCS was hiring workers to construct the solar farm. (Id. ¶ 48). A man named Hector worked for Alpha Services as the project manager. (Id. ¶¶ 62–63). Hector was responsible for overseeing construction plans, compliance with safety regulations, and overall staffing of the project. (Id. ¶ 63).

Plaintiffs Rodriguez Martinez and Hernandez Lopez were provided shovels at the worksite. (Id. ¶ 61). The shovels were kept in a storage container that was owned and controlled by

3

defendants Mendoza and ECCS. (Id.) The shovels were owned by one of the other defendants. (Id.).

Alpha services required workers to wear safety equipment including a brightly colored vest, hard hat, gloves, boots, and safety glasses. (Id. ¶ 69). Hector conducted mandatory weekly safety meetings where he explained that such equipment was required, and that if a worker did not bring the required equipment, that worker would not be permitted to work that day. (Id.). Alpha Services posted signs at the solar farm reiterating these requirements. (Id.). While Alpha Services and ECCS maintained workers' compensation insurance policies for work performed in North Carolina, Solar Guys did not. (Id. ¶ 88).

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

4

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

"The FLSA was enacted to protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (internal quotation marks omitted). "Because the [FLSA] is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." Id.

The FLSA establishes a minimum wage and requires payment of overtime to covered employees for each hour worked in excess of forty per work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). "An employee is defined as 'any individual employed by an employer,'" Schultz, 466 F.3d at 304 (quoting 29 U.S.C. § 203(3)(1)). "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d).

Regulations promulgated by the United States Department of Labor "distinguish between 'separate' employment—when two persons or entities are 'entirely independent' with respect to a worker's employment—and 'joint' employment—when the two persons or entities are 'not completely disassociated.'" Salinas v. Comercial Interiors, Inc., 848 F.3d 125, 141 (4th Cir. 2017) (quoting 29 C.F.R. § 791.2(a)); see Hall v. DIRECTV, LLC, 846 F.3d 757, 765–66 (4th Cir. 2017) (same). Courts in the Fourth Circuit analyze FLSA joint employment claims under a two-step framework, "under which court must first determine whether two entities should be treated as joint employers and then analyze whether the worker constitutes an employee or independent contractor of the combined entities, if they are joint employers, or each entity, if they are separate employers."

5

Salinas, 848 F.3d at 140.

Pertinent to the first step, there are at least three nonexclusive scenarios in which joint employment exists:

1. Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

2. Where one employer is acting directly or indirectly in the interest of the other employer (or employees) in relation to the employee; or

3. Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 U.S.C. § 203(b).

"Although the regulations identify three distinct scenarios, all three speak to one fundamental question: whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." Salinas, 848 F.3d at 141.

In determining whether alleged joint employers are "not completely disassociated," the court must weigh the following six nonexhaustive factors:

1. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

2. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

3. The degree of permanency and duration of the relationship between the

6

> putative joint employers;
>
> 4. Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
>
> 5. Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
>
> 6. Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Salinas, 848 F.3d at 141–42.

In establishing the foregoing test, the Fourth Circuit emphasized that "[t]he ultimate determination of joint employment must be based upon the circumstances of the whole activity." Id. at 142 (quoting Schultz, 466 F.3d at 306) (citing 29 C.F.R. § 791.2(a) ("A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case.")). Any single factor may be sufficient to support a finding of joint employment if the facts supporting that factor demonstrate that the employer in question "has a substantial role in determining the essential terms and conditions of a worker's employment." Id.

After determining whether employment is joint or separate, the court turns to the second step under Schultz to consider whether a "worker constitutes an employee or independent contractor of the combined entities, if they are joint employers, or each entity, if they are separate employers." Salinas, 848 F.3d at 140 (quoting Schultz, 466 F.3d at 305–307). In addressing whether an individual qualifies as an "employee" under the FLSA, the court must consider the "economic

7

realities" to determine whether the individual is "economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." Schultz, 466 F.3d at 304.

Courts consider six factors to ascertain the economic realities for a given relationship between worker and business, including:

(1) the degree of control that the putative employer has over the manner in which the work is performed;

(2) the worker's opportunities for profit or loss dependent on his managerial skill;

(3) the worker's investment in equipment or material, or his employment of other workers;

(4) the degree of skill required for the work;

(5) the permanence of the working relationship; and

(6) the degree to which the services rendered are an integral part of the putative employer's business.

Id. "No single factor is dispositive[.]" Id.

"In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance." Garcia v. Frog Island Seafood, Inc., 644 F.Supp.2d 696, 707 (E.D.N.C. 2009) (citing Laborers' Int. Union of North America v. Case Farms, Inc., 127 N.C.App. 312, 314 (1997) (applying federal decisions interpreting the term "employee" to NCWHA claims)). Accordingly, where, with exceptions not pertinent here, the FLSA and NCWHA each give the same definition for the terms "employer" and "employee," compare 29 U.S.C. § 203(d)–(e), with N.C. Gen. Stat. §95-25.2(4)–(5), the Fourth Circuit's pronouncements of law pertaining to those definitions under the FLSA apply also to claims under the NCWHA, including the framework described in Salinas and Schultz. See Garcia, 644

8

F.Supp.2d at 707.

Turning to step one, under the first Salinas factor, no allegation suggests that movants "jointly determine[d], share[d], or allocate[d] the power to direct, control, or supervise" any plaintiff. See 848 F.3d at 141. Rather, the complaint alleges that only defendants Mendoza, ECCS, and Alpha Services determined, shared, or allocated such power. (See DE 5 ¶¶ 62–63 (Hector, an employee of Alpha Services, served as project manager), 69 (Alpha Services required workers to wear safety gear, Hector conducted safety meetings, and Alpha Services posted signs indicating safety requirments.)). Accordingly, this factor weighs against a determination of joint employment. See Salinas, 848 F.3d at 141.

Under the second Salinas factor, nothing indicates that movants "jointly determine[d], share[d], or allocate[d] the power to . . . hire or fire [any plaintiff] or modify the terms or conditions of [any plaintiff's] employment." See 848 F.3d at 141. On the contrary, the complaint alleges that only defendants Mendoza, ECCS, and Alpha Services possessed formal authority or otherwise exercised as a matter of practiced any power to hire, fire, or modify the terms of or conditions of any plaintiff's employment. (See DE 5 ¶¶ 31 & 35 (Alpha Services was responsible for hiring and managing subcontractors and staff necessary to construct the solar farm), 48 (Mendoza advertised on Facebook that ECCS was hiring workers to construct the solar farm)). Accordingly, this factor also weighs against a determination of joint employment. See Salinas, 848 F.3d at 141.

The third factor, "degree of permanency and duration of the relationship between the putative joint employers[,]" Salinas, 848 F.3d at 141, weighs in favor of finding joint employment where the complaint alleges facts sufficient to support an inference that the relationships between movants and other defendants spanned the duration of the solar farm construction project or a substantial part

9

thereof. (See DE 5 ¶ 38 (describing the parties' practice of submitting invoices for worker pay throughout duration of construction of the solar farm)). That duration of association is consistent with joint employment; therefore, the third Salinas factor weighs in favor of determination of joint employment. See Salinas, 848 F.3d at 141.

Applying the fourth Salinas factor, which addresses relationships of management or ownership as between putative joint employers, see id. the complaint alleges affirmatively that defendants Solar Guys and ECCS's are managed separately by defendants Ramos and Mendoza, respectively. (DE 5 ¶¶ 20, 24). The complaint does not address management of other defendants. Moreover, the complaint does not allege that any of the entity defendants owns or manages another, nor that any two or more entity defendants are under common ownership or management by any third person or entity. Rather, the complaint alleges that the entity defendants are associated by contract, while the individual defendants serve as officers and/or directors of their respective entities. (Id.) Conclusion follows from these observations that the fourth Salinas factor weighs against a determination of joint employment where no defendant owns, manages, nor shares ownership or management with any other defendant. See Salinas, 848 F.3d at 141.

Applying the fifth Salinas factor, "[w]hether the work is performed on a premises owned or controlled by one or more of the putative joint employers[,]" id., nothing in the complaint suggests that defendant Ramos or Solar Guys owned or controlled the premises where the solar farm was built nor any other location pertinent to this case. On the contrary, the only allegations arguably pertinent to ownership or control of the premises suggest that Alpha Services was owner. (See DE 5 ¶¶ 45 (Alpha Services constructed a fence around the solar farm and hired security guards), 46 (Alpha Services established a trailer office on the solar farm premises)). Thus, the fifth Salinas factor

10

Case 5:17-cv-00628-FL   Document 65   Filed 08/08/18   Page 10 of 15

weighs against a determination of joint employment. See 848 F.3d at 141.

Finally, under the sixth Salinas factor, which addresses "allocat[ion] [of] responsibility over functions ordinarily carried out by an employer," id., the complaint alleges that Solar Guys, with Ramos as its president and director, handled payroll, may have provided shovels, and did not carry worker's compensation insurance. (DE 5 ¶¶ 38, 39, 41, 61, 88). The foregoing combined with duration of association under factor three constitute the sum of allegations in the complaint suggesting that Ramos or Solar Guys acted as joint employers. These factors, standing alone, do not warrant a determination that Ramos or Solar Guys acted as joint employers with any other employer. In particular, the factual allegations in the complaint allow inference that Solar Guys ministerially processed wage payments by accepting invoices from ECCS and paying those invoices with money received from Alpha Services. (See DE 5 ¶ 38, 39, 41). Any further inference that Solar Guys had a "substantial role in determining the essential terms and conditions of a worker's employment[,]" Salinas, 848 F.3d at 142, by, for example, actually setting the rate of pay, length of work hours, or determining how any tasks should be completed is speculative and unsupported by the facts alleged. Similarly, even construing the complaint liberally to allege that Solar Guys provided shovels, it cannot be said that status as a joint employer arises from ownership of one item of equipment where, as here, no allegation suggests that such ownership affects the essential terms of a worker's employment.

In sum, although even a single factor may be sufficient to support a determination of joint employment, id, in this instance, where plaintiffs fail to allege that movants did more than process payroll statements in a ministerial fashion and provided shovels used at the solar farm, the complaint fails to allege that movants undertook that "substantial role in determining the essential terms and

11

conditions of a worker's employment" that would give rise to joint employer status under the FLSA. See id.

Plaintiffs argue that movants may be deemed joint employers on the ground that their contractual relationship with ECCS and/or Alpha Services tracks closely the second example of joint employment described in 29 C.F.R. § 203(b), namely, "[w]here one employer is acting directly or indirectly in the interest of the other employer (or employees) in relation to the employee." Salinas, 848 F.3d at 141. However, this argument fails because each example described in the regulation "speak[s] to one fundamental question: whether two or more persons or entities are 'not completely disassociated' with respect to a worker <u>such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine</u> . . . <u>the essential terms and conditions of the worker's employment</u>." Id. (emphasis added). A contract presumably serves interests of all parties to the contract; nonetheless, a party that simply enters into a contract with an employer does not, without more, become a joint employer with respect to the employer's workers. Rather, actions taken in the interest of an employer are relevant to determining joint employment only where such actions involving sharing, allocating responsibility for, or otherwise codetermining the essential terms and conditions of a worker's employment. See id. Allegation of agreement by movants to process wage payments and to provide shovels does not give rise to any inference that movants shared or allocated any control over the essential terms of any plaintiff's employment with other defendants. See id.

Plaintiffs advance further argument on the basis of various inferences they contend the court may draw from the alleged facts. First, plaintiffs worked for at least four supervisors, but plaintiffs are unaware of the identity of their supervisors' employers. (See DE 5 ¶ 52, 56). Plaintiff's contend the court may infer from this information gap that plaintiffs' supervisors worked for Solar Guys.

12

However, this argument fails because the inference does not follow. While it is a plausible inference that plaintiffs' supervisors worked for someone, conclusion that those supervisors worked for Solar Guys in particular is unwarranted. See Iqbal, 556 U.S. at 678.

Second, plaintiffs contend that where movants agreed to provide labor that defendant Alpha Services needed and hired ECCS and Mendoza to help supply that labor, (DE 5 ¶¶ 35, 36), the court may infer that Solar guys and Ramos dictated to ECCS and Mendoza when certain workers could or must be hired or fired. This argument fails because just as "an allegation of parallel business conduct" fails to allege an antitrust conspiracy, Twombly, 550 U.S. at 556, allegation of a chain of contract where parties exchanged employment-related responsibilities fails to allege that an intermediary in the chain actually undertook to discharge any duties as an employer. See id. That is, the complaint fails to allege any facts tending to rule out possibility that movants simply passed on to ECCS and Mendoza via subcontract responsibility to hire, fire, or otherwise manage according to Alpha Service's preferences any workers in the putative class.

Finally, plaintiffs argue that their rate of pay and dates of employment, which, as plaintiffs argue, plainly constitute essential terms of employment, were dictated by Ramos and Solar Guys. However, this argument is unsupported by allegations in the complaint. That is, where plaintiff do not allege any instance where movants dictated terms of plaintiffs' employment to Mendoza or ECCS, plaintiffs' arguments on such basis fail.

Having determined that movants did not constitute joint employers on the basis of the alleged facts, the court turns to step two of the Schultz inquiry, addressing whether movants employed plaintiffs separately from other defendants. Salinas, 848 F.3d at 140; Schultz, 466 F.3d at 305–307. Viewing in isolation plaintiffs' relationship with movants, see Salinas, 848 F.3d at 140, the

13

allegations do not support conclusion that plaintiffs had any relationship with Ramos or Solar Guys of significance under the FLSA, either as employees or even as independent contractors. Rather, where plaintiffs allege, at most, that Ramos and Solar Guys served as no more than intermediaries in the chain of contract linking Alpha Services and plaintiffs, (see DE 5 ¶¶ 30, 31, 35, 36, 37), relationships of employment or independent contract involved in this case, if any, exist between plaintiffs, ECCS, Mendoza, and/or Alpha Services. Accordingly, the complaint fails to state a claim that movants were "employers" under the FLSA or NCWHA. Thus, plaintiffs' claims against movants must be dismissed.

Finally, although the complaint as written fails to state a claim, where an "amendment in the complaint could cure the defects in the plaintiff's case[,]" Domino Sugar Corp. v. Sugar Workers Local Union 392 of United Food and Commercial Workers Intern. Union, 10 F.3d 1064, 1067 (4th Cir. 1993), it is within the court's discretion to grant dismissal without prejudice. Adbul-Mumit v. Alexandria Hyundai, LLC, ___ F.3d ___, 2018 WL 3405474, at * 5–6 (4th Cir. 2018). In this instance, the court exercises its discretion to grant dismissal without prejudice. Plaintiffs are allowed leave to file a motion to amend if they deem that action warranted. Any such motion must conform, however, to the requirements of Rule 15 of the Federal Rules of Civil Procedure, this court's local rules, and the case management order. (See DE 45 ¶ II.B).

## CONCLUSION

For reasons noted, motion to dismiss filed by defendant Ramos and Solar Guys, (DE 32), is GRANTED, and plaintiffs' claims against those defendants are DISMISSED WITHOUT PREJUDICE.

SO ORDERED, this the 8th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge